[No. B103963. Second Dist., Div. Three. Sept. 30, 1998.]

BOARD OF DENTAL EXAMINERS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MIKHAIL SEDLER, Real Party in Interest.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III B., C. and D.

## COUNSEL

Daniel E. Lungren, Attorney General, and Michael A. Shekey, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

Freeburg, Judy & Nettels and Steven J. Freeburg for Real Party in Interest.

## OPINION

### KITCHING, J.—

### I

#### INTRODUCTION

In this matter, we consider whether a remand order is appealable and whether the trial court, under Code of Civil Procedure section 1094.5, subdivision (e), properly augmented an administrative record with evidence submitted after the administrative hearing. We hold that a remand order is not an appealable order, but that this court may consider an appeal from a remand order as a petition for writ of mandamus in the appropriate case. We further hold that the trial court properly augmented the administrative record.[1]

The Board of Dental Examiners (Board) took disciplinary action against Dr. Mikhail Sedler (Sedler) after an administrative hearing based on patient complaints of misdiagnosis and excessive treatments. Sedler challenged the

---

[1]This matter does not involve the merits of Dr. Sedler's petition for writ of mandate, and those issues will not be discussed.

Board's action by filing a petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5.[2] Attached to the petition was a letter, dated September 8, 1995, from Dr. Timothy Knox, one of the witnesses who testified at the administrative hearing, which contained new evidence offered for the first time in the mandamus proceeding. In response to the petition, the Board filed a declaration signed by Dr. Knox, dated September 26, 1995, which explained the circumstances under which he wrote the September 8 letter.

Without ruling on the petition, the trial court issued a partial remand to the Board to consider the new evidence and reevaluate the credibility of Dr. Knox. The Board issued its findings in response to the partial remand. The trial court then found that Dr. Knox was not a credible witness and issued a second remand order directing the Board to conduct a new hearing without using any of his testimony. The Board appeals from that remand order. We consider the Board's appeal as a petition for writ of mandamus and we affirm the trial court.

II

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Introduction*

Sedler is a general dentist. On or about April 5, 1994, the Board filed an accusation which charged him with misdiagnosing and overprescribing periodontal treatment and restorative dental work for 10 patients. The administrative law judge (ALJ) conducted a six-day hearing in February 1995 and found cause for discipline.

On May 19, 1995, the Board adopted the ALJ's position, revoked Sedler's license, stayed revocation, placed Sedler on probation for 10 years, and imposed a 45-day suspension. Sedler requested a stay and reconsideration of the decision, which the Board granted. On September 11, 1995, after a review of the entire record, the Board reaffirmed its decision based on findings regarding former patients Lisa H. and Judith M. With regard to Lisa H., the Board found that periodontal treatment was justified, but that restoration work was not. The relevant portion of this decision read.

"PATIENT LISA H.

"A.   On or about June 7, 1993, [Dr. Sedler] performed a full-mouth examination of the patient Lisa H. Based on this examination, he diagnosed

---

[2]Unless otherwise indicated, all statutory reference are to the Code of Civil Procedure.

a 'periodontal case type II, early periodontitis.' He thus formulated a periodontal treatment plan of deep scaling and root planing. Bone loss was confirmed by Drs. Danforth, Goldman and Levine. Thus, the suggested treatment was justified.

"B.   Respondent's restorative treatment plan for this patient was highly inaccurate, in that his diagnosed treatment was clearly excessive. He recommended restorative treatment of teeth #1, 2, 14 and 21 [sic], which were not in need of said treatment. His plan was unsupported by clinical and radiographic evidence, and represents an extreme departure from the standard of care required of a licensee."

On or about September 15, 1995, Sedler again requested a stay to petition for reconsideration of the Board's decision. The Board denied both the stay and Sedler's request to submit the petition. Attached to this petition, however, were additional documents, including a September 8, 1995, letter to Sedler's counsel from Dr. Timothy Knox (Knox). Knox, Lisa H.'s subsequent treating dentist, had testified for the Board at Sedler's administrative hearing. The Board did not consider the Knox letter. It was not written until after the hearing. This matter concerns the subsequent augmentation of the administrative record with the Knox letter.

B.   *Petition for Writ of Mandate*

On September 29, 1995, Sedler sought mandamus relief in the superior court to compel the Board to reinstate his license. Sedler contended, in relevant part, that the evidence did not support the revocation decision. Sedler also requested that the court consider an attached exhibit, Knox's September 8, 1995, letter, in which Knox opined that Sedler's restorative treatment of certain of Lisa H.'s teeth was within the standard of care.[3] This evidence, Sedler argued, disproved the Board's finding that his treatment plan "represent[ed] an extreme departure from the standard of care required

---

[3]The Knox letter provided:

"I have been contacted by Dr. Sedler recently concerning this case. He mentioned that it could be helpful for him if I made some comments regarding my treatment plan and his treatment plan for Lisa. [H].

"The specific teeth in question are teeth numbers 1, 2, 14, and 19. I examined Lisa [H.] last on November 14, 1994. At that time I did not detect any decay on these teeth and so I did not recommend restorations. I understand that Dr. Sedler recommended occlusal bonded restorations on teeth numbers 1, 2, and 14. Although I did not notice decay on numbers 1 and 2, these teeth have susceptible grooves and fissures that may benefit from conservative bonding. Tooth number 14 has an existing amalgam filling which has been in place for several years. Replacement of this filling with a bonded filling may actually strengthen the tooth and help prevent it from fracture. Tooth number 19 has a moderate sized amalgam that is also several years old. Dr. Sedler recommended a PFM crown due to undermining of the buccal cusps and

of a licensee." In opposition, the Board argued against the trial court's consideration of the Knox letter on the grounds that the information was irrelevant and that it could have been the provided at the administrative hearing. Attached to the Board's opposition was Knox's declaration, dated September 26, 1995, in which Knox explained how he was telephoned and harassed by Sedler into writing the September 8th letter.[4] Knox's declaration also acknowledged possible discrepancies between his hearing testimony on February 9, 1995, and statements in his September 8, 1995, letter. He stated:

"Finally, I want to emphasize that all information contained in my testimony in the hearing in this matter and in all the correspondence that I generated (prior to the execution of the letter that I wrote for Dr. Sedler on September 8, 1995) is true and correct to the best of my knowledge.

"Accordingly, it is possible that conflicting information exists between the [September 8, 1995] letter . . . and my testimony or other letters that I

---

thin mesial and distal walls. Although I did not recommend this treatment the prevention of a tooth fracture by this treatment has merit.

"It seems obvious that in comparing my proposed treatment with that proposed by Dr. Sedler that I practice dentistry in a very conservative manner and that Dr. Sedler in a more aggressive pro-active fashion. Concerning this particular patient I believe that both styles of patient care are within the standard of care."

[4]Knox declared, in relevant part:

". . . On or about September 1, 1995, Dr. Sedler called me on the telephone at my dental office. Dr. Sedler told me that he had recently learned of the result of the hearing that had been conducted in February, 1995. Dr. Sedler further related that he was displeased with the results of the hearing and as a result he planned to appeal the results in the Superior Court.

". . . During this conversation, Dr. Sedler insisted that his diagnosis of Ms. [H.] was correct. Dr. Sedler also told me that as a consequence of the results of the hearing, he had become depressed and that his children had noticed the change in his mood and repeatedly asked him what was the matter.

". . . Also, during this conversation, Dr. Sedler asked me to examine Ms. [H.] once again with regard to her teeth numbers 1, 2, 14 and 19. Dr. Sedler also suggested that I write a letter which would state that the treatment that he rendered to Ms. [H.] is nothing different than what other dentists in the area might do. During this conversation, Dr. Sedler's demeanor was aggressive, while also pleading. Dr. Sedler told me that the case had been going on for a long time.

". . . On or about September 5, 1995, Dr. Sedler once again called me on the telephone at my dental office. Dr. Sedler asked me to tell him why I had not sent the letter that I had said I would. Dr. Sedler then asked me to use the phrase, 'within the standard of care' to describe the dental treatment that Dr. Sedler had rendered to Ms. [H.]

". . . On or about September 8, 1995, I hesitantly wrote the letter . . . .

". . . On or about September 11, 1995, I mailed the letter to Dr. Sedler.

". . . On or about September 12, 1995, Dr. Sedler telephoned my office and left a message . . . for me to call him . . . . Later that afternoon, I brought a copy of the letter to Dr. Sedler's dental office and left [it] with the receptionist . . . .

". . . To the best of my recollection, Dr. Sedler telephoned my office on or about September 13, 1995, and left a message . . . for me to call him . . . . In any event, I never returned Dr. Sedler's telephone call. I have not spoken to, nor have I received any further telephone messages from Dr. Sedler . . . ."

wrote. Due to my motivation, . . . in the event that there is any such conflicting information, I assert that all other forms of information including, but not limited to, my testimony, dental records or letters (written prior to September 8, 1995) should supersede the letter of September 8, 1995 and, therefore, be controlling."

Sedler replied to the Board's opposition by contending that Knox had exonerated him from any standard of care violation as to his restoration work. Sedler, however, neither responded to the Board's objections to the trial court's consideration of the Knox letter nor provided evidence that contravened Knox's declaration.

C. *November 20, 1995, Hearing*

On November 20, 1995, the trial court neither addressed the propriety of the Board's findings nor Sedler's arguments, but opined that Knox's letter and subsequent declaration raised a question as to Knox's credibility. The trial court ordered the matter remanded to the Board for the limited purpose of reevaluating Knox's February 9, 1995, testimony and his credibility in light of these exhibits. The court permitted the Board to use its own methods of evaluation.

D. *Board's Decision After Review*

On February 7, 1996, the Board filed its written decision with the trial court. The Board affirmed Knox's credibility after reviewing his administrative hearing testimony, his September 8, 1995, letter and his subsequent declaration.[5]

---

[5]The Board's written decision stated, in relevant part:

"1. The Board finds Dr. Knox's testimony on February 9, 1995, to be credible for the following reasons:

"A. Dr. Knox's September 8, 1995, letter to Steven J. Freeburg, which allegedly contradicts his earlier testimony at hearing, was not a sworn statement;

"B. Dr. Knox's declaration under penalty of perjury dated September 26, 1995, affirms his February 9, 1995, testimony at hearing;

"C. Based upon Dr. Knox's declaration under penalty of perjury . . . , it is evident that the September 8, 1995, letter to Steven J. Freeburg was written as a result of considerable pressure on the part of Dr. Sedler; and

"D. Based upon Dr. Knox's declaration under penalty of perjury . . . , it is evident that Dr. Knox believed this matter to have been concluded, and that his . . . letter would therefore have no effect on these proceedings.

"2. The Board also finds that, even if Dr. Knox's February 9, 1995, testimony were not credible, it has no substantial relevance in this matter for the following reasons:

"A. Dr. Knox's February 9, 1995, testimony at the hearing related to periodontal and bone loss issues with respect to patient Lisa H., and did not address the issue of dental cavities.

E. *April 22, 1996, Hearing/Ruling*

At the continued mandamus hearing on April 22, 1996, the trial court received into evidence the administrative record and filed exhibits, and then declared the matter submitted. When the Board objected to consideration of the Knox letter as new evidence, the court responded: "That evidence was presented, though, to the hearing body . . . on the remand; was it not?"

In an April 22, 1996, minute order, the trial court ruled that Knox was not a credible witness and remanded the matter to the Board for a new hearing without Knox's testimony.[6]

On June 20, 1996, the Board timely filed a notice of appeal.

## III

## DISCUSSION

A. *Appealability*

Before discussing the merits of this appeal, we address the issue of the appealability of the remand order. While a remand order is not appealable (see *Cobb* v. *University of So. California* (1995) 32 Cal.App.4th 798, 801-802 [38 Cal.Rptr.2d 543]), we find this current action an appropriate case to exercise our discretion to treat the Board's appeal as a petition for writ of mandamus. (*IFS Industries, Inc.* v. *Stephens* (1984) 159 Cal.App.3d 740, 744, 756 [205 Cal.Rptr. 915].)

In *Green* v. *Board of Dental Examiners* (1996) 47 Cal.App.4th 786 [55 Cal.Rptr.2d 140], this court, without articulating the reason, treated a non-appealable remand order as a petition for writ of mandamus. We had

---

Therefore, the statements in Dr. Knox's . . . letter regarding Dr. Sedler's restorative treatment have no bearing in this matter.

"B.   Dr. Knox's statement in his . . . letter . . . as to Dr. Sedler's standard of care is not relevant, as he offered no testimony on that issue at hearing.

"C.   The Board's Finding of Fact VI.A. in its September 11, 1995, Decision . . . relates to Dr. Sedler's restorative treatment plan, and not to periodontal care. Therefore, Dr. Knox's testimony regarding periodontal and bone loss issues is not germane to this finding of fact."

[6]The minute order read, in relevant part:

"The court again remands the matter back to respondent. Dr. Knox's credibility is highly questionable given the inconsistent information he offers.

"The Board did not adjudge Dr. Knox's credibility on remand. Given the inconsistency of the evidence of Dr. Knox the court adjudges Dr. Knox to be not credible as a witness.

"Respondent is ordered to conduct a new hearing without its use of Dr. Knox as a witness. The Board also should investigate whether petitioner inproperly [*sic*] influenced Dr. Knox to make his inconsistent statements."

discretion to do so. *Green*, however, has been misinterpreted as permitting an appeal from such a nonappealable order. This interpretation is incorrect. A remand order is not an appealable order, but in an appropriate case, the Court of Appeal has the discretion to treat it as a petition for writ of mandamus.

B.-D.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IV

### DISPOSITION

The Board's petition for writ of mandamus is denied. Parties to bear their own costs on appeal.

Klein, P. J., and Croskey, J., concurred.

A petition for a rehearing was denied October 27, 1998, and petitioner's application for review by the Supreme Court was denied December 16, 1998.

---

*See footnote, *ante*, page 1424.