Filed 1/28/16  Uwaydah v. Superior Court CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| MUNIR UWAYDAH, | B259674 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BS143440) |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Defendant and Respondent; | |
| MEDICAL BOARD OF CALIFORNIA, | |
| Real Party in Interest and Respondent. | |

APPEAL from the denial of a petition for a writ of mandate in the Superior Court of Los Angeles County.   Joanne B. O'Donnell, Judge.  Reversed.

Bonne, Bridges, Mueller, O'Keefe & Nichols, Peter R. Osinoff, and Edward Idell for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Gloria L. Castro, Assistant Attorney General, Robert McKim Bell and Peggie Bradford Tarwater, Deputy Attorneys General, for Real Party in Interest and Respondent Medical Board of California

No appearance for Defendant and Respondent Superior Court of Los Angeles County.

_____

Appellant Munir Uwaydah, a physician, challenges the trial court's denial of his petition for a writ of mandamus against respondent Medical Board of California (the Board). The Board placed Uwaydah on probation, one of the terms of which was that Uwaydah could not remain outside California for a total of two years. When a Lebanese religious court confiscated Uwaydah's passport, he was unable to leave Lebanon for more than two years. Because of this absence from California the Board, without a hearing, revoked Uwaydah's probation and canceled his medical license.

## FACTS AND PROCEEDINGS BELOW

In 2009, the Board filed a disciplinary action against Uwaydah, accusing him of negligence in allowing a physician assistant to begin performing surgery in Uwaydah's absence, and dishonesty in falsifying practice protocol documents related to his performance with the physician assistant. The Board also accused Uwaydah of dishonesty for participating in a scheme involving the purchase of a $1 million CT scanner for a clinic in Saudi Arabia, in which a federal court found him personally liable for fraud. (*General Elec. Medical Systems Europe, Inc. v. Prometheus Health Imaging, Inc.* (6th Cir. 2006) 205 Fed.Appx. 418, 421.) Uwaydah and the Board reached a settlement agreement, effective October 1, 2010, which included a disciplinary order against Uwaydah. The disciplinary order placed Uwaydah on probation for a period of two years subject to certain terms and conditions. Uwaydah was required to reside and practice in California, and to notify the Board if he left the state or stopped practicing for more than 30 days. The order provided that Uwaydah's license "shall be automatically cancelled if [Uwaydah's] periods of temporary or permanent residence or practice outside California total two years."

In June 2010, Uwaydah traveled to Lebanon to address a family matter. He signed the settlement agreement with the Board in July. Thereafter, a Lebanese religious court which was considering the family matter ordered Uwaydah, a citizen of both Lebanon and the United States, to remain in Lebanon and to surrender both of his passports, which he did. Through counsel, Uwaydah informed the Board of his situation, and explained that it was impossible for him to return to California until his passport was returned to

2

him.  The Board replied by reiterating the requirement that Uwaydah not reside or practice outside California for a total of two years.

In December 2011, Uwaydah petitioned the Board for penalty relief, requesting modification of the probation order to allow him to serve his probation in Lebanon, and to extend the period of automatic cancellation of his license.  The Board did not respond to the petition except to reiterate the two-year residency and practice requirement, and to ask about Uwaydah's whereabouts.  In June 2013, after Uwaydah had been outside California for nearly three years, the Board issued an order canceling Uwaydah's license to practice medicine.

Uwaydah filed a timely petition for a writ of administrative mandamus in the trial court seeking to vacate the Board's decision.  The court reviewed the petition as a petition for a traditional writ of mandamus, pursuant to Code of Civil Procedure section 1085, rather than a petition for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5.  The court rejected all of Uwaydah's claims and denied the petition.

## DISCUSSION

The Board contends that we lack jurisdiction to decide this as an appeal.

Business and Professions Code section 2337 (section 2337) governs "superior court review of a decision revoking, suspending, or restricting a license."  In such cases, "review of the superior court's decision shall be pursuant to a petition for an extraordinary writ."  (*Ibid.*)  Because Uwaydah did not file a petition for an extraordinary writ in this court, the Board contends that this appeal must be dismissed.  Uwaydah contends that the appeal is proper because, when the Board canceled Uwaydah's license, it did so without a hearing.

We agree with the Board.  Section 2337 functions "to expedite the completion of judicial review of physician discipline decisions" (*Landau v. Superior Court* (1998) 81 Cal.App.4th 191, 205), and courts have interpreted it broadly to achieve this purpose. (E.g., *Sela v. Medical Board of California* (2015) 237 Cal.App.4th 221, 229-230 [holding that section 2337 applied to review of a Board decision even though the Board did not

3

impose a new revocation, suspension, or restriction of a license].)  There is no reason to restrict the application of section 2337 on the basis of the procedure the Board followed in canceling Uwaydah's license.

Nevertheless, because the application of section 2337 in a situation like this is not obvious, the issues have been thoroughly briefed, and our determination is purely one of law, in the interest of justice we exercise our discretion to treat Uwaydah's appeal as a writ and review it as such.  (*Zabetian v. Medical Board* (2000) 80 Cal.App.4th 462, 466.)

The trial court reviewed Uwaydah's petition as a petition for a traditional writ of mandamus, pursuant to Code of Civil Procedure section 1085, rather than a petition for a writ of administrative mandamus, pursuant to Code of Civil Procedure section 1094.5 (section 1094.5).  A writ pursuant to section 1094.5 is appropriate when a petitioner seeks "review of a proceeding that required a hearing, the taking of evidence, and discretionary administrative determination of facts.  [Citation.]  In such cases Code of Civil Procedure section 1094.5 applies whether or not a hearing actually was held."  (*Helene Curtis, Inc. v. Los Angeles County Assessment Appeals Bds.* (2004) 121 Cal.App.4th 29, 37.)

The Board did not hold a hearing before canceling Uwaydah's license.  The trial court ruled that this was appropriate on the ground that Uwaydah had waived his right to a hearing by signing the settlement agreement, which provided that his "license shall be automatically cancelled if [his] periods of temporary or permanent residence or practice outside California total two years."  Uwaydah conceded that he had resided outside California for more than two years, and the trial court held that the Board could invoke the automatic cancellation provision without need of a hearing.

We disagree with the trial court's decision to treat this matter as a writ under section 1085.  It should have considered this case under section 1094.5 because, as we discuss below, Uwaydah was entitled to a hearing before the Board.

The right to practice one's profession is protected by the Fourteenth Amendment right to due process.  (*Schware v. Board of Bar Examiners* (1957) 353 U.S. 232, 238-239.)  Due process requires notice and an opportunity to be heard before this right can be taken away.  (*Cleveland Board of Education v. Loudermill* (1985) 470 U.S.

4

532, 542.) In this case, the settlement agreement explicitly provided Uwaydah, in case of a probation violation, with the right to "notice and the opportunity to be heard" before the Board could terminate his probation. In a separate section, the agreement also provided that his "license shall be automatically cancelled if [his] periods of temporary or permanent residence or practice outside California total two years." In the absence of an explicit waiver of due process, we will not interpret the automatic cancellation provision as revoking Uwaydah's right to notice and a hearing. (See *Stewart v. Justice Court* (1977) 74 Cal.App.3d 607, 612 ["We are under a duty to indulge every reasonable presumption against waiver of fundamental constitutional rights"].) Instead, in a case like this, where Uwaydah asserted a defense of impossibility, the Board must provide him with an opportunity to present that defense.

Although there is no dispute that Uwaydah was absent from California more than two years, he argued both before the trial court and here that his failure to satisfy the residency requirement should be excused because it was impossible for him to comply. The trial court rejected his argument on the ground that the settlement agreement was a contract, and he failed to satisfy the requirements for legal impossibility under contract law.

The decision whether to cancel his license properly belonged to the Board, not the court, following a hearing at which Uwaydah would be entitled to present evidence to support his defense. The hearing must be held before the Board rather than the trial court in part because that is what the terms of Uwaydah's probation require. In addition, the Board has greater expertise in rendering a decision regarding the fitness of a physician to practice. Uwaydah's case is not purely a matter of contract law. Although "administrative proceeding stipulations for settlement . . . are governed by contract principles" (*Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 133), the public interest and public policy must take precedence. (*Ibid.*; *Rich Vision Centers, Inc. v. Board of Medical Examiners* (1983) 144 Cal.App.3d 110, 115-116.) Of particular relevance here is that "[t]he main purpose of the Board, like other agencies within the Department of Consumer Affairs is to insure that persons engaged in the profession

5

possess and use 'the requisite skills and qualifications necessary to provide safe and effective services to the public.'" (*Rich Vision Centers, Inc. v. Board of Medical Examiners*, *supra*, 144 Cal.App.3d at p. 114, quoting Bus. & Prof. Code, § 101.6.)

Thus, on remand, the Board may also consider whether Uwaydah's absence from practice caused his skills to deteriorate to the extent that he no longer possesses the skills and qualifications necessary to serve as a physician in California. If it answers that question in the affirmative, it might be justified in canceling his license or imposing a new period of probation with conditions appropriate to the new circumstances.

## DISPOSITION

The judgment of the trial court denying the writ of mandamus is reversed, and the case is remanded to the trial court to order that the Board hold a hearing in conformity with this opinion. Appellant to recover his costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


JOHNSON, J.


6